I got a message to start my video, but this isn't my case. I'm the fourth case. This is your case, Mr. Brandman. Okay. And I see Mr. Sanuk on the line. In this case, it's James Clay and Audrey Asciola versus the Commissioner of the Internal Revenue. Mr. Sanuk is here for appellants. And Mr. Brandman, you are here for the Commissioner. And Mr. Sanuk, are you ready to proceed with your argument? I am, Your Honor. Okay. Good morning, Your Honor. May it please the court, my name is Robert Sanuk. I represent the appellants Audrey Asciola and James Clay. We're appealing the decision of the tax court denying a legal position and the sovereign immunity of the Miccosukee Tribe of Indians of Florida as it regards and relates to their decision, their sovereign decision to identify the method, manner and means by which they compensate their members for the use of tribal lands pursuant to the Miccosukee Constitution and applicable federal statutes. The tax court overlooked or ignored well-settled law and provisions of Title 25 of the Code of Federal Regulations and ignored a long history of the Miccosukee Tribes business determination on how it used its lands, ultimately deciding that it could ignore those unless there was a clear and unequivocal or clear understanding or exception to the legal principle that was put out in the Kaplan case that all income, including the income of Native Americans was subject to taxation, absent some specific exception. The testimony at the hearing clearly indicated and was underfeuded that the chairman of the tribe, Billy Cypress, acted as a superintendent. That was an important portion of how the- Oh, let me ask, let me, if I can interrupt you. You mentioned the Kaplan case, wire versus Kaplan, but the Supreme Court in that case says income derived directly from the land, like logging is exempt from federal income taxation, but not income derived indirectly from the land. Isn't that what we have here? That this is income, this income that they're seeking to shield from federal income taxation liability isn't coming directly from the land. It's coming indirectly from the land. It's coming from casino revenue. It's the same type of income that in United States versus Jim, we found was not exempt from federal income taxation. The United States versus Jim case centered on General Welfare Act exemptions. And this is a different application. Directly from land can include rents paid for the use of land, regardless of where the income that comes from for that rent. The Miccosukees, by a constitution that was approved by the Bureau of Indian Affairs and by Congress is required by law to let all the members share in the revenue or resources of the tribe. That includes the use of its lands. The fact that they might put a drilling operation or a cattle operation, or in this case, a gaming operation on those lands, the land use has to be compensated for. Yes, you are correct that there are some cases that deal with logging ventures or gravel or other types of direct land related, but direct can also include revenue streams that require a building to be put on the lands or otherwise use of the lands for any type of resource or revenue. There are several revenue rulings which we cited in support of our position, which the court, the tax court just simply overlooked or glossed over saying that they weren't bound by those. But those revenue rulings all contained at least reference and support for hybridizing or splitting up campgrounds where you had some revenue that was derived from camping on the land and other revenue derived from permanent structures on the land. What's interesting here in this case, and which is different from the Jim analysis is that the Indian Gaming Regulatory Act, which centered on the per capita argument from the IRS does have a minimum requirement or a mandatory requirement that prior to any distributions being made from revenue sources, that there had to be a statute and ordinance passed, approved and set out by the Indian Gaming Regulatory Act and the National Gaming Commission that affirmed that it was a net revenue distribution. This is not a net revenue. This is a percentage-based leasing payment for the use of the lands. What documents do you have that show that this was a leasing payment? Well, the tribe calls it a gross receipts fee. That's how they defined it. And I think it's inappropriate to overlook the tribe's method of deciding what they call an item if they put a label on it. Again, the tribe's constitution only came because the U.S. required them to create something so that the U.S. would have a way to deal with them on a level or an understanding that the U.S. recognized. The fact that they said gross receipts fee doesn't change what the intent behind it was because it has been uniformly applied across the reservation for anyone who comes and uses tribal lands, whether it's a gas station or mineral rights or anything else. It's how the tribe was required or was able to determine value for the use of its lands. The tribe itself is located in a very hard to appraise swamp area. And under the provisions of part 162 of the Code of Federal Regulations that governs the tribe, the tribe has the method or the sovereign authority to determine how it values its property and how it gains compensation that's fair. You couldn't find a comparable means of determining rental value or sale of swampland by looking at other areas of the swamp. So the tribe said the best way we can do this is to charge a fee, a gross receipts fee that was based on a revenue stream from any of the businesses. And in this case, this came a gaming facility and above the line, as you would call it from a general accounting, generally accepted accounting principle and above the line determination that was a pre net revenue determination that was paid to each member undivided interest for using that land. What makes it- This land, this casino is on land covered in the Miccosukee Settlement Agreement, right? Part of it is and part of it is not. Part of it is under the Miccosukee Reserve Area Act and part of it is under the Settlement Agreement. The parking lot, as the court noted, is part of the Settlement Agreement. The other portion was acquired later, but it doesn't change the analysis of what 25 CFR. How do you get around the language in that agreement that plainly states that only income coming from lands conveyed under the agreement is exempt from federal income taxes and casino is not on land covered by the agreement? I don't think I have to get around it. There are several ways for the tribe to determine its valuation and the manner in which it leases its properties. And this lease, this property was, had no gaming facility on it and there was a gross receipts fee that was required for anything that was gonna be put on that land, whether it was part of the Settlement Act or exempt by statute or otherwise. And so because the IRS has consistently said that the sale and leasing of tribal lands is a tax exempt act, just the tribe's decision back in the 80s, even before that in the late 70s, to charge this fee as a means for valuing property or valuing what the cost of using it would be, would still be applicable even in this scenario. The reality is, and I think the question the court seemed to get passed without focusing was what authority governs how a tribe determines its method for compensation of its property? Is it an IRS determination or is it a BIA determination? And clearly, Tile 25 says that all issues arising out of Indian country fall squarely within the Bureau of Indian Affairs authority, the Secretary of Interior. And if you look at the Code of Federal Regulations, Part 162, it says the tribe gets to determine the method, manner and value of its property. And the tribe did that. And now the IRS comes back in and says, no, we disagree. We think it's a scheme where it's a per capita gaming revenue distribution. That may be the source of the income, but it's not what the income is. The income was designed and is paid based on how the tribe comply with the BIA rules and regulations in establishing a value for its property, how they're gonna get compensated for it and how they're gonna distribute it. That is required by statute and they've done that. The IRS has just come in and said, no, we disagree. And assume that that's correct, how do they get past the unrefuted testimony of the chairman of the tribe that clearly indicates he had the authority to affirm and follow 25 CFR 1.2, which was to waive, apply or administer the laws in the best interest of the tribe. And in applying the best interest standard, there was a determination that this was the best way to compensate all of the members for their undivided individual interests in the use of their property. The general counsel approved it as required by the constitution. The IRS coming in to try and trump or overcome the BIA's clear mandate authority, I think is inapplicable in this scenario. And Judge Pugh acknowledges it. And I think several times in her order states that there's just not an exception present, but the exception is the statute. The statutes that govern tribes and how they compensate for use of lands is the exception. It's clearly set out statutorily and clearly applicable to the way the tribe utilizes its lands. I often would say to the court, it's like the U.S. stole my car and now charges me to drive it once I get it back. This is property that belonged to the Miccosukee tribe. They got it back. Self-determination was created to allow them to decide and govern for themselves how they're gonna use it. They decide to do it. And then the IRS comes back in and says, hey, I know we took your property. You've got it back. You've got to pay us for using it. And that's not what the statute was intended. And I think applying the U.S. be wooden standard, if there is any disagreement or other arbitrary nature of the statutory language, it has to be decided in favor of the tribe and the best interests of the tribe, which is what the chairman's unrefuted testimony said had occurred. I see my time is up and I'll reserve my last few minutes for rebuttal. Thank you, counsel. We'll hear from Mr. Brannman. Morning, Judge Wilson, Judge Grant, Robert Brannman for the Commissioner of Internal Revenue. The touchstone for deciding this case is section 61 of the Internal Revenue Code. A person's gross income consists of all income from whatever source derived. The taxpayers in this case are not the tribe. It was James Clay and Audrey Osiel who received income from their tribe. Under rule 61, that's income. Doesn't matter whether the source of the tribe's money is casino revenue, rents, oil and gas royalties, sales tax on tribal businesses or other business operations. Whatever these two individuals receive from the tribe is taxable income unless it's exempt under a statute or a treaty. The only statute or treaty that my friend has identified as arguably exempting the receipts is the Miccosukee Settlement Act. And I think we've gone through that to show, for several reasons why it's doesn't, it really addresses a very different situation. There was a lawsuit between the tribe and Florida about a road. The settlement provided for an exchange of money and land. United States had to sign off on that and approved of the settlement terms and exempted from tax the property exchanged. The casino had already been built years before the settlement. So it obviously doesn't apply to anything having to do with the casino. But I wanna get to one other, there's another reason why the act cannot exempt the casino revenue. And this comes back to Judge Wilson's earlier point about how the money is derived, whether it's derived from Indian land. Even if the Miccosukees demolished their casino and rebuilt it on one of these transfer parcels, there would still, the revenue from the casino would still be taxable, not just because it's derived indirectly from use of land. But all those cases that talk about a tax exemption for Indians earning income directly from land are rooted in the old allotment system. Recall under the allotment system, Indians were considered to be incompetent to alienate their property. It was held in trust by the United States for a period of years. And by the time that Indians were presumed to be ready to join the body politic at the end of 25 years or some other term, they were entitled to get the property free and clear of any encumbrances. That's what the General Allotment Act said in several other similar allotment type systems. So the Supreme Court found in that case, since that individual had the value of his land was standing timber, he should be able to get the property at the end without a tax lien for the income from the felled timber. Those cases and the revenue rulings that my friend was referring to are all rooted in that allotment system. Miccosukee land is not allotted. Certainly none was allotted to Mr. Clay and Ms. Osceola and their share of the tribe's business profits does not come from land allotted to them. So those are the two reasons why the Miccosukee Settlement Act doesn't cover this situation. And my friend's argument about how the revenue was really not gambling income or casino income, it was really rent. Number one, the tax court found there was no evidence in the record to support that. And its finding is not clearly erroneous, at least not based on anything that my friend has identified in the tax court record. But also because of section 61, it wouldn't make any difference. Even if it were rent, it would still be taxable income to Mr. Clay and Ms. Osceola upon their receipt of it from the tribe. No statute or treaty indicates otherwise. I understand that you've got many layers of arguments, but if we conclude that this land is not covered by the Settlement Act, do we need to go any further or would that decide the case for you? That would decide the case for us. Thank you. There are no further questions. I don't have anything else I need to say. Thank you. All right, Mr. Osuna, you have reserved some time for rebuttal. Thank you, Your Honor. What about that? What if we say that the land,  covered by the settlement agreement? Doesn't that decide the case? Because the agreement itself controls? No, the settlement agreement controls some lands, but the issue is, do the statutes permit the tribe to, with its sovereign authority, establish the method, manner, and way they compensate for the use of its lands? If the answer to that is yes, regardless of its settlement agreement or something else, if the answer is yes to the tribe has that right by statute, then the question is, are these lease monies or something else? And if they're lease monies, are they taxable? The IRS revenue rulings have indicated since the 40s and 50s that leasing of Indian lands, not just income directly derived from them, the leasing of Indian lands is not taxable. The court seems to even agree with that. In the court's order, Judge Pugh actually says that, whether the distributions are either net gaming revenue, gross revenue, or leasing, they have no exception unless there's a statute that gives them such. The statute we rely on is not simply the 25, 17, 50, but also part 162 of the Bureau of Indian Affairs Code of Federal Regulations, and the authority that Chairman Cyprus had to waive or modify the statutes in part 162 and title 20. And the court has not yet agreed to that. What no one seems to address, at least, you know, Mr. Bramman hasn't disputed, is that the only testimony unrefuted at the hearing was that of Chairman Cyprus, that he possessed all of the authority granted to him by the Secretary of Interior to apply these statutes. And the Secretary of Interior has regularly retroactively approved, waived and modified statutes because the Secretary of Interior, unlike other administrative agencies, acts not only as the person in charge of the statutes, but a trustee for the best interest of a tribe. And they are unique in their duties. You don't cite any cases or regulations that confer any such authority in your group? 25 CFR 1.2 is the statute that says the Secretary or its designated agents, in this case, Mr. Cyprus, has the authority to waive or modify these statutes. And so if the question is whether or not this land- When you say these statutes, which statutes are you referring to? All of 25. That's the statutes that govern all of Indian country. And there's no exception in there that says, except for this statute, we can't apply this. And often, especially when tribes come in later and recognition, they retroactively apply statutes to the new tribe that just got created, even though it wasn't specifically mentioned in a specific statute. That's how the secretary's office works. So in this case, section 459, section 1750, the application and modification of them would have been within the authority of the chairman. And no one has disputed the chairman didn't have that authority. How do we reconcile that with section two of title 25, which says that the commissioner of Indian affairs is responsible for managing, quote, all matters arising out of Indian relations? So the commissioner of Indian affairs is the assistant secretary, and the policy and procedure for how that is done is found in tile 25 of the code of federal regulations. So that becomes the operating manual on how the commissioner fulfills that duty. And 25.1.2, section 1.2, is where the delegation to the other agents or his duly designated representative, in this case, the area superintendent, which would have been chairman Cypress, allows that person to approve regulations and do what is necessary to carry out the daily functions of the commissioner. The commissioner obviously can't oversee every day 572 federally recognized tribes. So it's delegated to local area and regional superintendents, in this case, chairman Cypress. Could the chairman decide as a blanket matter that it would be best for the tribe not to pay individual income taxes, that that's what would be best for those members? I mean, he could decide it. I don't know how binding that would be. He could give advice on how binding that would be. That's not a statutory interpretation. If he simply said, this is how we're gonna lease this property, and that we decide that this is a lease of undeveloped lands for compensation, that would be, I think, binding on everyone. But- Is land that already has a casino on it and undeveloped land? Well, but that's the point. This didn't always have a casino, and the leasing of the gross receipts fee was enacted prior to the casino being built. The fact that it's there now doesn't matter. It was always land that's tribal land. And unlike what Mr. Brandman says, this is not an allotment holdover. This has nothing to do with allotment. Allotment is an antiquated ideology. It's up to the tribe how it divides its property. And in this case, their constitution says it's an undivided interest. So that's their allotment. To be in specific names, that's an outdated ideology from the 1800s. 1950 cured that. All right, I think we have your arguments, counsel. Thank you. Thank you all very much. Appreciate your time. And this court is in recess until nine o'clock tomorrow morning.